United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THOMAS COHEN, et al.,
Plaintiffs,
v.
INSINKERATOR, LLC,
Defendant.

Case No. 25-cv-10719-PCP

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 31

In this putative class action, plaintiffs Thomas Cohen and Erik Paulsen allege that defendant InSinkErator LLC marketed and sold garbage disposals that it knew to be defective in violation of California law. InSinkErator now moves to dismiss plaintiffs' complaint for lack of subject-matter jurisdiction or, in the alternative, for failure to state a claim. For the reasons that follow, the Court concludes that plaintiffs have not alleged any actual or imminent injury sufficient to confer Article III standing. The Court therefore dismisses the complaint with leave to amend.

**BACKGROUND**

InSinkErator designs, manufactures, and sells garbage disposals. This action concerns certain models in Insinkerator's "Badger" series, its lowest-price disposals. According to the complaint, InSinkErator has sold Badgers since the 1990s and has long represented that they are "rugged and reliable" and provide "years of dependable service." Dkt. No. 24 ¶ 10. Yet Badgers "are made with galvanized steel grind components and galvanized steel Upper End Frames," and "galvanized steel's zinc coating will begin to corrode almost immediately once it is installed and exposed to water, leading to irreversible material loss." *Id.* ¶¶ 6–8. InSinkErator allegedly knew this but nevertheless "selected these materials" and "designed, manufactured, distributed, marketed, and sold the Badgers" under the false pretense of durability. *Id.* ¶ 8. As a result, the

complaint alleges, "the Badgers are not suitable for their intended use as household garbage disposals that properly and reliably dispose of food waste under the sink and into the home plumbing system." *Id.*

Most of the 110-page complaint focuses on the risks of Badgers failing before the end of their design life due to the corrosion of their galvanized steel components, InSinkErator's awareness of such risks, and InSinkErator's marketing of Badgers as durable and long-lasting nowithstanding those known risks. The complaint's specific allegations concerning the two named plaintiffs, however, are sparse. *See id.* ¶¶ 175–209. Both plaintiffs acquired new Badgers in 2022 or 2023 after their prior Badgers failed for reasons not specified in the complaint. *Id.* ¶¶ 175–76, 196–97. Both directed a handyman to assist with the replacement of their garbage disposal. *Id.* ¶¶ 177, 198. The handymen purchased new Badgers and installed them in plaintiffs' homes. *Id.* ¶¶ 177, 198. Nothing in the complaint suggests that plaintiffs directed the handymen to purchase particular garbage disposals or particular InSinkErator models. Nor does the complaint allege that plaintiffs saw, prior to their handymen's purchase of their Badgers, any InSinkErator marketing or public statement concerning the Badgers, their durability, their use of galvanized steel, or their lifespan. After a period of regular use (one year for Cohen and three years for Paulsen), both plaintiffs inspected the inside of their Badgers and discovered red-colored rust. *Id.* ¶¶ 179, 203. Because Cohen was still within his Badger's warranty window, he contacted InSinkErator but was told that his Badger simply had "cosmetic" rust that would not "compromise the integrity of the unit. *Id.* ¶¶ 180–87. Both plaintiffs allege that their Badgers have "not performed as expected during [their] service li[ves]," though they do not specify how the products have underperformed or allege that they have begun to leak due to corrosion. *Id.* ¶¶ 191, 205. And while plaintiffs alleges that they "would not have purchased the Badgers" if they had known of the alleged defect, both plaintiffs indicate that they nevertheless "may seek to purchase a Badger in the future given the ease with which a replacement Badger can be installed as well as the additional cost and difficulty related to removing InSinkErator's proprietary mountain assembly." *Id.* ¶¶ 191–92, 205–06.

On behalf of a putative class of similarly situated Badger purchasers, plaintiffs assert

United States District Court
Northern District of California

claims against InSinkErator for violations of the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, and California's Legal Remedies Act (CLRA), Cal. Civ. Code § 1750 *et seq.*; Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 *et seq.*; False Advertising Law (FAL), Cal. Bus. & Prof. § 17500 *et seq.*; Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790 *et seq.*; and Uniform Commercial Code, Cal. Com. Code § 2314 *et seq.*, as well as state common-law claims for fraudulent concealment, breach of contract and common-law warranty, and unjust enrichment.

InSinkErator now moves to dismiss the complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6).

**LEGAL STANDARD**

If a complaint does not establish a federal court's subject matter jurisdiction, including due to the plaintiff's lack of Article III standing, it may be dismissed under Federal Rule of Civil Procedure 12(b)(1). With respect to Article III standing, plaintiffs "must allege facts, not mere legal conclusions," and, "[a]ssuming compliance with those standards, the plaintiff's factual allegations will ordinarily be accepted as true unless challenged by the defendant." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Here, InSinkErator brings a "facial" challenge to plaintiffs' Article III standing, meaning that it "accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Id.* (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)); *see also Bowen v. Energizer Holdings*, 118 F.4th 1134, 1142 (9th Cir. 2024).

**ANALYSIS**

**I. Plaintiffs fail to plead Article III standing.**

InSinkErator moves to dismiss on multiple grounds. First, it argues that plaintiffs have not established Article III standing to pursue their claims for damages or prospective relief. Second, InSinkErator contends that the Court lacks equitable jurisdiction over plaintiffs' UCL, FAL, and unjust enrichment claims due to the availability of adequate remedies at law. Third, InSinkErator argues that plaintiffs' putative class claim under the MMWA is not cognizable in federal court because the complaint names fewer than one hundred plaintiffs. Fourth, InSinkErator argues that

many of Paulsen's claims are time-barred. And finally, InSinkErator insists that all of the claims asserted in the complaint fail on the merits as a matter of law. The Court agrees that plaintiffs have not pleaded sufficient facts to establish their Article III standing to assert any of the claims in the complaint. For that reason, the Court must dismiss plaintiffs' complaint at the threshold for lack of subject-matter jurisdiction, without reaching InSinkErator's other arguments.

"In a class action, the plaintiff class bears the burden of showing that Article III standing exists." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011). Absent class members' injuries and claims cannot confer standing—instead, "[s]tanding exists [only] if at least one named plaintiff meets the requirements." *Id.* And plaintiffs "must demonstrate standing separately for each form of relief sought." *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010) (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Serv., Inc.*, 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)). Here, the complaint seeks both retrospective relief (i.e., damages and restitution arising from InSinkErator's design, marketing, and sale of Badger garbage disposals) and prospective relief (i.e., an injunction prohibiting InSinkErator's allegedly unlawful practices). Because neither Cohen nor Paulsen has demonstrated standing to pursue either form of relief, the Court lacks subject-matter jurisdiction over any of their claims.

**A. Retrospective Relief**

To invoke federal jurisdiction, a plaintiff must establish "the 'irreducible constitutional minimum' of standing," which "consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)), *as revised* (May 24, 2016). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* To satisfy the first element, a plaintiff must demonstrate that he suffered an injury in fact that is "concrete, … particularized, … and actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. In other words, "[n]o concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021).

Here, the complaint does not establish any injury in fact stemming from Cohen and Paulsen's purchases of their existing Badgers, as is required to pursue their claims for damages

related to those purchases. Plaintiffs allege that they discovered rust on the interior of their Badgers, but neither alleges that the rust has impeded the functioning of his Badger in any concrete manner. They merely allege that the Badgers have "not performed as expected" without identifying particular performance issues. Such vague and conclusory allegations of unmet expectations are insufficient to show actual injury. *See Pietzak v. Microsoft Corp.*, No. 15-CV-5527, 2015 WL 7888408, at *2 (C.D. Cal. Nov. 17, 2015) (explaining that "conclusory allegations" that plaintiffs "suffered financial loss and lost profits," without greater specificity, were "insufficient to allege an injury in fact").

Nor does the complaint establish that plaintiffs' Badgers will imminently suffer from the alleged defect, that is, from corrosion to the galvanized steel elements that impedes their performance or causes them to fail before the end of their intended design life. The complaint alleges that this defect is present in *every* Badger. Yet the allegations in the complaint make clear that only a minority of Badgers fail due to corrosion of the galvanized steel elements causing leakages. Dkt. No. 24 ¶ 26. While "[e]ven more Badgers fail from corrosion related material loss that causes Badgers to stop working altogether," nothing in the complaint suggests that this happens to most Badgers. *Id.* And the complaint expressly acknowledges that, even among Badgers that ultimately fail due to corrosion, a majority outlast their intended design life. *See id.* Given these allegations in the complaint, the possibility that plaintiffs' Badgers will fail before the end of their intended design life based on the alleged defect is too speculative to support standing. *See Whitson v. Bumbo*, No. 07-CV-05597, 2009 WL 1515597, *4–6 (N.D. Cal. Apr. 16, 2009) (finding no standing where the plaintiff alleged that a child safety seat was defective because of the propensity of children to fall from it but did not allege that any child actually fell from the seat she purchased).

Plaintiffs argue that they need not show that their Badgers have or imminently will fail because they have standing under a "benefit-of-the-bargain injury" theory. In essence, plaintiffs argue that they bargained for a product that they expected to be "rugged," "durable," and "long lasting" but instead received a less durable (and therefore defective) product for which they would have paid a lower price if informed of its defects. This argument fails for three reasons.

First, plaintiffs did not bargain with InSinkErator at all. The complaint alleges that both Cohen and Paulsen received their Badgers from handymen, rather than purchasing the Badgers directly, and the complaint does not allege that either plaintiff gave the handymen any instruction as to what garbage disposal to purchase. "When a plaintiff never transacted with a defendant, there can be no benefit-of-the-bargain injury[.]" *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1055 (S.D. Cal. 2023) (citing *In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 971 (N.D. Cal. 2021)). While plaintiffs suggested at the hearing on InSinkErator's motion that at least one of them specifically instructed his handyman to purchase a Badger, that allegation is not contained in the complaint.

Second, plaintiffs do not allege that they individually relied on any particular misrepresentations by Insinkerator that engendered their belief that they were receiving the benefit of a rugged or durable product. Indeed, the portion of the complaint that discusses plaintiffs' acquisition of their Badgers does not suggest that either plaintiff saw *any* InSinkErator marketing. *See White v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 20-CV-04048-SVK, 2020 WL 13578444, at *9 (N.D. Cal. Nov. 17, 2020) ("If a plaintiff did not see specified representations upon which his claims rely before purchasing the defendant's products or services, that plaintiff does not have standing because he did not rely on these representations and suffered no injury."). As plaintiffs note, the complaint elsewhere alleges that "[p]laintiffs and [c]lass [m]embers purchased the Badgers when they otherwise would not have absent [InSinkErator]'s misrepresentations and/or omissions, and, alternatively, paid more for the Badgers than they would have absent [InSinkErator]'s misrepresentations and/or omissions." Dkt. No. 24 ¶ 265. But such "generalized allegations" of injury are insufficient because they "conflate the [named] plaintiff[s'] allegations with those of the putative class members," "fail[] to make these allegations with sufficient particularity," and conflict with some of the complaint's more specific allegations about the named plaintiffs' individual experiences. *Park-Kim v. Daikin Indus., Ltd.*, No. 15-CV-9523, 2016 WL 1069035, at *5 (C.D. Cal. Mar. 17, 2016).

Third, even if plaintiffs had established that they bargained for a particular benefit based on InSinkErator's alleged misrepresentations, they have not established a sufficient economic

injury arising from that bargain. Where, as here, "the economic loss is predicated solely on how a product functions, and the product has not malfunctioned, … something more is required than simply alleging an overpayment for a 'defective' product." *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1166 n.11 (C.D. Cal. 2011). For example, in *In re Toyota*, plaintiffs' allegations that they individually experienced defects in their own cars resulting in unintended acceleration, which directly impeded the car's function of safely transporting the plaintiffs and therefore decreased the cars' value, "plausibly establish[ed] an economic loss." *Id.* at 1163–65. But here, plaintiffs "do not claim that [their Badgers] fail[] to work as described"; "that they experienced any problems" with the Badgers' functioning to dispose of food waste; or "that they are unwilling to [use] their [Badgers]." *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 973 (C.D. Cal. 2014). They allege only that their Badgers have begun to corrode in the same manner as *every* Badger, even those that continue to function well past the end of their intended design life. This does not "plausibly demonstrate any diminished value in their [Badgers]" or supply "the required 'something more' than alleged overpayment for the [Badgers]." *Id.*

For these reasons, plaintiffs' complaint does not establish that they have suffered an injury in fact sufficient to confer standing to pursue their claims for damages and restitution.

**B. Prospective Relief**

Plaintiffs also fail to demonstrate standing to pursue their claims for prospective relief, which seek to "[p]ermanently enjoin InSinkErator from engaging in the wrongful and unlawful conduct" plaintiffs allege. To seek prospective relief, "a plaintiff must show that he is under *threat* of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical[.]" *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (emphasis added). Here, the only prospective injury plaintiffs allege is that they "*may* seek to purchase a Badger [and again receive a defective product] in the future given the ease with which a replacement Badger can be installed as well as the additional cost and difficulty related to removing InSinkErator's proprietary mounting assembly." Dkt. No. 24 ¶¶ 192, 206 (emphasis added). That "conjectural [and] hypothetical" future injury is insufficient to establish a prospective injury. *Summers*, 555 U.S. at 493.

United States District Court
Northern District of California

To be certain, the Ninth Circuit has explained that a "previously deceived consumer may have standing to seek an injunction against false advertising or labeling" where the consumer "alleg[es] that []he will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although []he would like to." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018). But to establish standing in such circumstances, a plaintiff must allege sufficient facts to support a reasonable inference that he will actually purchase the product in the future and thus faces an imminent threat of injury from the defendant's alleged deception. *See id.* at 970–71. In *Davidson*, for example, the Ninth Circuit held that a plaintiff had "adequately alleged that she faces an imminent or actual threat of future harm caused by [the defendant]'s false advertising" concerning "flushable" wipes where she "alleged that she continues to desire to purchase wipes that are suitable for disposal in a household toilet; would purchase truly flushable wipes manufactured by [the defendant] if it were possible; regularly visits stores where [the defendant]'s 'flushable' wipes are sold; and is continually presented with [the defendant]'s flushable wipes packaging but has no way of determining whether the representation 'flushable' is in fact true."

The complaint here contains no similar allegations. Plaintiffs have not alleged that they are actively seeking to purchase garbage disposals. To the contrary, as discussed above, the complaint suggests that their existing disposals continue to function and could do so for several years, obviating an imminent need to re-enter the market and the resulting threat of renewed injury. And when plaintiffs' current disposals ultimately fail, the complaint suggests that it is merely possible that plaintiffs "may" purchase Badgers again. Dkt. No. 24 ¶¶ 192, 206. At the hearing, plaintiffs argued that plaintiffs' re-purchase of Badgers is all but assured because, as the complaint alleges, InSinkErator's proprietary mounting assembly is difficult and costly to remove. *Id.* ¶¶ 192, 206. But that assertion is belied by the complaint's statements that, had plaintiffs known about Badgers' alleged defects, they would not have purchased their second Badgers in 2022 and 2023 despite having already installed the proprietary mounting systems. *See id.* ¶¶ 176, 191, 197, 205. Plaintiffs' allegations that they will require new garbage disposals at some unspecified time and may choose to purchase Badgers are simply too speculative to show the actual or imminent threat

of injury necessary to establish standing to pursue prospective relief.

* * *

Accordingly, InSinkErator's motion to dismiss is granted. Because plaintiffs represent that they can cure the jurisdictional deficiencies in their complaint, including by adding specific allegations discussed at the hearing on InSinkErator's motion, dismissal is with leave to amend.

**II. The parties' administrative sealing motions are granted in part.**

When commencing this action, plaintiffs filed an administrative motion to consider whether certain material in their original complaint should be sealed because it disclosed InSinkErator's confidential or proprietary information. *See* Dkt. No. 3. Because the parties disagreed as to the necessity of certain redactions to the complaint, they then met and conferred to reach agreement as to the proper scope of sealing. In the meantime, to enable their negotiations, the parties filed a joint motion to stay any ruling on the initial sealing motion. *See* Dkt. No. 19. The parties' negotiations were fruitful, and plaintiffs soon filed a "corrected" complaint and sealing motion proposing significantly narrower redactions. *See* Dkt. No. 25. The parties also filed motions to seal portions of InSinkErator's motion to dismiss and the subsequent briefing that, InSinkErator asserts, contain its confidential and proprietary business information. *See* Dkt. Nos. 30, 46, and 48.

Because plaintiffs have replaced their initial motion to seal the original complaint with narrower sealing requests as to the "corrected" complaint, the initial motion and the parties' joint request to stay a ruling on that motion are denied as moot.

Because the documents subject to the parties' remaining sealing requests are "more than tangentially related to the merits," the compelling-reasons standard applies. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016).

InSinkErator has established that compelling reasons exist for the proposed redactions to its motion to dismiss and the related briefing. The redactions protect details of InSinkErator's internal product development (e.g., its selection of particular materials and those materials' impact on the design life of its products); marketing strategies; and financial information (e.g., the overall manufacturing cost of certain products and the cost of particular product components). And

United States District Court
Northern District of California

InSinkErator has explained that disclosure of those details would enable its competitors to "free ride" off its proprietary product designs and to copy or undermine its marketing and pricing strategies. Such competitive harms provide compelling reasons to seal. *See id.* at 1097 (explaining that compelling reasons may support sealing "when a court record might be used … as sources of business information that might harm a litigant's competitive standing"); *Unlockd Media, Inc. Liquidation Tr. v. Google LLC*, No. 21-CV-07250-HSG, 2024 WL 457799, at *2 (N.D. Cal. Feb. 6, 2024) (sealing a party's confidential product information that, "if public, could be used by ... competitors to give them an unfair advantage in the development and negotiations of rival products"); *Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2015 WL 13673842, at *2 (N.D. Cal. Aug. 4, 2015) (sealing "nonpublic information discussing [a party's] pricing strategy, business decision-making, customer research, and financial records"). Because the information InSinkErator seeks to redact (e.g., the exact failure rates of certain Badger models for particular reasons) are not necessary to understand the reasons for the dismissal of this action, the compelling reasons for sealing outweigh the public's interest in access to the information. *See Entangled Media, LLC v. Dropbox Inc.*, No. 5:23-CV-03264-PCP, 2026 WL 984235, at *2 (N.D. Cal. Apr. 13, 2026). Accordingly, the Court grants InSinkErator's sealing requests as to its motion and the subsequent briefing.

But InSinkErator's requests as to plaintiffs' corrected complaint cover an excessive amount of material. While compelling reasons exist to seal some of this material for the reasons just discussed, a sealing request must be "narrowly tailored to seal only the sealable material[.]" Civ. L.R. 79–5(c)(3). InSinkErator's requests as to the complaint are "overly broad"—for example, proposing to redact entire sentences or paragraphs instead of the few words disclosing sensitive information—and are denied without prejudice on that basis. Civ. L.R. 79-5(f)(6). InSinkErator may submit a revised sealing motion with respect to the complaint within 30 days of this order. Failure to limit proposed redactions to genuinely sensitive information will result in denial of InSinkErator's revised motion in full.

**CONCLUSION**

For the foregoing reasons, InSinkErator's motion to dismiss (Dkt. No. 31) is GRANTED,

and plaintiffs' complaint is dismissed without prejudice and with leave to amend. Plaintiffs shall file an amended complaint, if any, within 30 days of this Order. Plaintiff's administrative motion to consider whether material in the original complaint should be sealed (Dkt. No. 3) and the parties' joint motion to stay a ruling on that sealing motion (Dkt. No. 19) are DENIED as moot. And the parties' remaining sealing motions (Dkt. Nos. 25, 30, 46, and 48) are GRANTED IN PART.

**IT IS SO ORDERED.**

Dated: August 6, 2026

P. Casey Pitts
United States District Judge